# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KETURAH AUDRA BOWMAN,** | : | **Civil No. 1:21-cv-751** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

Social Security appeals often entail legal challenges to an Administrative Law Judge's (ALJ) assessment of medical opinion evidence. So it is in the instant case. In this appeal, the plaintiff, Keturah Bowman advances a single, specific argument, asserting that the ALJ's determination that she retained the residual functional capacity to perform light work was the product of legal error because the ALJ failed to properly evaluate the opinions of Bowman's treating physician, Dr. Ann Ramage.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

In the decision denying Bowman's application for benefits, the ALJ gave Dr.

Ramage's medical opinion concerning Bowman's physical limitations "little

weight," observing that:

> [T]he record includes an August 2017 statement from Ann Ramage,
> MD, the claimant's primary care provider. Dr. Ramage stated that the
> claimant's symptoms constantly interfere with her attention and
> concentration; she must lie down or recline in excess o[f] normal breaks
> during an eight-hour workday; and can walk one block. Dr. Ramage
> noted the claimant can sit one hour total and stand/walk no hours in an
> eight-hour workday; needs 16 unscheduled half-hour breaks in an
> eight-hour workday, can occasionally lift and carry less than ten
> pounds, and can handle, finger, and reach ten percent of the time
> (B28F/3). Dr. Ramage indicated the claimant will be absent more than
> four times a month (B28F/4). In August 2016, Dr. Ramage reported the
> claimant "did have FCE and determined she could drive short
> distances" (B10F/15). These opinions are unsupported by the
> longitudinal treatment notes, which generally show the claimant in no
> acute distress with normal gait, normal station, normal range of motion,
> full strength, normal pedal pulses, normal sensation, lungs clear to
> auscultation and percussion, normal respiration rate, equal and non-
> labored breath sounds, no focal deficit, and no edema (B4F; B7F; B8F;
> B9F; B10F; B17F; B18F; B23F; B26F; B30F, B32F; B34F; B38F;
> B39F; B40F; B44F). These opinions are also unsupported because they
> are a checklist and conclusory statement with minimal explanation.
> Additionally, these opinions are inconsistent with the claimant's
> activities of daily living, which shows she can perform most personal
> care activities, drive short distances, and shop for necessities (B8E).
> Further, the record does not document problems with use of the left
> upper extremity, the limitation to sitting one hour in an eight-hour
> workday, and the claimant utilizes very conservative treatment for her
> carpal tunnel syndrome.

(Tr. 18-19).

2

The ALJ also gave little weight to Dr. Ramage's August 2017 statement, which opined that the Bowman had moderate limitations in understanding, remembering, or applying information; extreme limitations in concentrating, persisting, or maintaining pace; moderate limitations in adapting or managing herself; and moderate limitations in interacting with others. (Tr. 19-20). According to the ALJ:

> This opinion is unsupported by the progress notes through the date last insured, which mostly show the claimant was fully oriented and cooperative with appropriate mood, appropriate affect, normal languages, appropriate behavior, appropriate dress, organized and coherent thought process, normal speech, intact immediate memory, intact recent memory, intact remote memory, intact concentration, normal sleep, normal appetite, normal attention, normal energy, good insight, and good judgment (B7F; B10F; B17F; B20F; B23F; B26F; B30F; B32F; B33F; B34F; B39F; B40F; B44F; B45F; B47F). This opinion is also unsupported because it is a checklist with minimal explanation. Further, this opinion is inconsistent with the claimant's activities of daily living, which shows she can drive and manage finances (B8E). Additionally, this opinion is inconsistent with the claimant's lack of inpatient mental health treatment or referral to crisis intervention through the date last insured.

(Id.)

In evaluating the sufficiency of the ALJ's assessment of this medical opinion, we are enjoined to apply a deferential standard of review, one which simply calls for a determination of whether substantial evidence supported the ALJ's decision. Mindful of the fact that, in this context, substantial evidence is a term of art which

"means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019), we find that substantial evidence supported the ALJ's findings which afforded little weight to Dr. Ramage's medical opinions. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   Statement of Facts and of the Case

### A. Procedural Background

According to the administrative record, this is the plaintiff's second Social Security disability application. Ms. Bowman had previously applied for benefits in November of 2011, but that initial application was denied in August of 2012 and the ALJ's decision was upheld by the Appeals Council in 2015. (Tr. 140).

On June 20, 2016, Keturah Bowman applied for benefits under Title II of the Social Security Act, alleging an onset of disability beginning in September of 2013. (Tr. 158, 323). Bowman was born in 1974 and was 38 years old at the time of the alleged onset of her disability. (Tr. 21). Bowman was, therefore, considered a younger worker under the Commissioner's regulations. She had two years of college education, (Tr. 56), and prior employment as a medical secretary, data entry clerk, and nursery school attendant. (Tr. 89, 59, 372).

4

In her June 2016 disability application, Ms. Bowman reported experiencing a number of physical and emotional impairments including diabetes, asthma, obesity, depression, concussion, and post-concussion syndrome status post mild traumatic brain injury. (Tr. 13). The precipitating event which led to this disability application was a work-related injury. Ms. Bowman was reportedly kicked in the head by a five-year-old on September 19, 2013, while working at a daycare center. (Tr. 1188-89). Following this injury, Bowman had worked part-time at the daycare from January through August of 2014, (Tr. 104-05), and had received a workers compensation settlement. (Tr. 118).

Bowman's date last insured for purposes of Social Security eligibility was June 30, 2018. (Tr. 12). Thus, the question before the ALJ in the instant case was whether the evidence demonstrated that Bowman was totally disabled between her alleged date of onset of disability, September 2013, and her date last insured, June 30, 2018. With the issues framed in this fashion, Bowman's claim was denied at the administrative level on October 27, 2016. (Tr. 154). Bowman sought review of this decision, and following a hearing conducted on  February 3, 2018, (Tr. 98-138), an ALJ entered an initial decision denying her claim on June 11, 2018. (Tr. 158-70). Upon agency review, the Social Security Appeals Council entered an order on October 30, 2019 remanding Bowman's claims for further consideration by an ALJ,

(Tr. 177), thus setting the stage for the decision which is now the subject of this appeal.

### B. **Bowman's Treatment History and Medical Opinions**

This Social Security appeal presents a singular question for our consideration; namely, was the ALJ's determination that Ms. Bowman retained the residual functional capacity to perform light work the product of legal error because the ALJ failed to properly evaluate the opinions of Bowman's treating physician, Dr. Ann Ramage? (Doc. 20 at 3). As to this issue, the administrative record reveals the following:

During the pertinent time frame, between September 2013 and June 2018, Bowman's primary care physician was Dr. Ann Ramage. For the most part, Ms. Bowman's treatment records from this period are remarkably unremarkable. (Tr. 913-1132). Thus, the treatment records consist largely of routine check-ups, coupled with treatment of various minor medical matters such as allergic reactions to hand sanitizer. Objective testing yielded few noteworthy results, physical examinations frequently resulted in normal findings, and Bowman often denied having other complaints beyond occasional issues with asthma and chronic headaches.

Bowman was seen by Dr. Ramage on October 7, 2013, one month after the alleged onset of her disability. (Tr. 1017-19). At that time, Bowman complained of

a kidney stone. (<u>Id.</u>)  While it was noted that Bowman has intermittent headaches, on October 7 she denied experiencing headaches or any other symptoms unrelated to her kidney stone. (Tr. 1018). At an October 17, 2013 appointment, Bowman once again denied any problems beyond a headache and rash. (Tr. 993). A November 25, 2013 routine appointment revealed that her asthma, diabetes, and hypertension were all under control, and that her post-concussive headache was being managed by another physician. (Tr. 985).

Similar, and similarly unremarkable, medical findings were made by Dr. Ramage during routine check-ups in March, April, September, November, and December of 2014. (Tr. 961-83). In March of 2014, Bowman had a routine follow up appointment with Dr. Ramage. (Tr. 977-78). At that time she complained of a dry mouth but exhibited no other acute symptoms. (Tr. 978-83). On April 4, 2014, Bowman was seen by Dr. Ramage complaining of a clogged left ear for the past six months. (Tr. 975). Beyond noting some chronic headaches, however, her examination results and self-reported medical history were unremarkable. (Tr. 977-78). On September 3, 2014, Bowman was seen for a follow up appointment regarding her chronic conditions. (Tr. 966). While she continued to describe headaches and depression, her asthma and diabetes were under control. (Tr. 967). She denied other problems and her examination results were normal. (Tr. 969-70).

Two months later, on November 3, 2014, Bowman had another routine follow up appointment. (Tr. 961). Once again, except for headaches which were being treated by a neurologist, the findings from this appointment were benign and not noteworthy. (Tr. 961-66). A December 1, 2014 appointment yielded similar results. (Tr. 969-70). Moreover, objective medical testing conducted in 2014 provided scant support for Bowman's claims of disability. A January 23, 2014 MRI revealed no cute intracranial abnormalities. (Tr. 1187). Likewise, a February 8, 2014 x-ray only disclosed mild degenerative disc disease in the cervical spine. (Tr. 1185).

Bowman's primary care treatment records from 2015 followed a similar pattern of routine visits punctuated by largely unremarkable findings. (Tr. 937-54). During clinical encounters in January, July, and November 2015, Dr. Ramage documented complaints by Bowman of headaches but noted otherwise normal and benign findings. (Id.) Bowman consistently denied any other acute medical problems. (Tr. 946, 954). Furthermore, treatment records from Bowman's neurologist, who was taking the lead in addressing her post-concussion headaches, documented steady improvement in her condition during this time frame. For example, neurology treatment records reported improvements in her neurological symptoms in March, May, and September of 2014. (Tr. 1157, 1166, 1172). By May of 2014, it was noted that Bowman was working two hours on a computer. (Tr.

8

1167). Further, May 5, 2015 neurology records indicated that Bowman continued to display improvement in her symptoms. (Tr. 1152). On September 10, 2015, it was reported that Bowman had a functional capacity examination which determined that she could drive short distances, and she was looking for sedentary, secretarial work. (Tr. 1148). At this time, according to her neurologist Bowman was experiencing slow improvement in walking and mild improvement in her headaches. (Tr. 1147). She also displayed no acute distress. (Tr. 1151).

Ms. Bowman continued to be treated by Dr. Ramage in February, March, April, August, and September of 2016. (Tr. 913-36, 1021-26, 1261). While she suffered from some episodes of sinusitis and asthma in February and March (Tr. 925, 932), and continued to complain of headaches in August 2016 (Tr. 914), treatment records show that Bowman's diabetes was under control and her examination findings were largely unchanged. (Tr. 917-18, 930, 936, 1026). Bowman also described to her caregivers an ability to attend to recreational pursuits. Thus, on April 27, 2016, Bowman reported that she was going on a cruise and was not having any problems with her asthma. (Tr. 1026).

Bowman reported experiencing a fall during a follow-up appointment with her family practice in January of 2017. (Tr. 1670). However, records, of her clinical encounters in March, April, May, July, August, and October of 2017 generally

9

confirmed that her asthma and diabetes were well controlled, and aside from her headaches and some body aches, Bowman denied any other acute medical problems. (Tr. 1635-70). Moreover, on May 20, 2017, Bowman was discharged from a physical therapy program at Wellspan "secondary to good progression." (Tr. 1369).

In particular, during an August 15, 2017 appointment, Bowman denied any physical or emotional problems, (Tr. 1644), but a "[l]engthy review of her physical symptoms were documented for disability." (Tr. 1641). That "lengthy review" was later reflected in physical and mental capacity assessments submitted by Dr. Ramage on August 15, 2017. (Tr. 1452-58). These assessment forms stood in stark contrast to the doctor's treatment notes. With respect to Bowman's physical limitations, on a check box form Dr. Ramage stated that Bowman's symptoms constantly interfered with her attention and concentration; that she would need to lie down or recline in excess of normal breaks during an eight-hour workday; that she could only walk one block; that she could sit one hour total during a work day and was unable to stand or walk at work; that she would need 16 unscheduled half-hour breaks in an eight-hour workday; that she can only occasionally lift and carry less than ten pounds; that she can never left of carry weights in excess of ten pounds; that she can handle, finger, and reach during only ten percent of the time; and that she should be absent from work more than four times each month. (Tr.1452-53). Thus, Dr. Ramage's cursory

physical assessment form indicated that Bowman's entire work day would consist of a series of sixteen unscheduled half hour breaks.

Using a similar check box form, Dr. Ramage opined that the Bowman had moderate limitations in understanding, remembering, or applying information; extreme limitations in concentrating, persisting, or maintaining pace; moderate limitations in adapting or managing herself; and moderate limitations in interacting with others. (Tr. 1456-58). These conclusions were at odds with the opinions of the state agency psychologist who found that Bowman had a greater capacity to undertake the emotional demands of the workplace. (Tr. 139-51).

It was on this record, a record marked by a striking contrast between Dr. Ramage's medical opinions and her own clinical treatment records, that Bowman's disability application came to be heard by the ALJ.

### C.    The ALJ's Hearing and Decision

It is against the backdrop of this evidence that the ALJ conducted a hearing in Bowman's case on April 29, 2020. (Tr. 47-97). During this hearing, the ALJ received testimony from Bowman and a vocational expert. Following these hearings, on May 12, 2020, the ALJ issued a decision denying this application for benefits. (Tr. 7-22). In that decision, the ALJ first concluded that Bowman met the insured status requirements of the Social Security Act through June 30, 2018. (Tr. 12). At Step 2

of the sequential analysis that governs Social Security cases, the ALJ found that Bowman's asthma, obesity, depression, concussion, and post-concussion syndrome status post mild traumatic brain injury were severe impairments (Tr. 13).

At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 14-15). Between Steps 3 and 4, the ALJ concluded that Bowman retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and she could not have tolerated concentrated exposure to humidity; poorly ventilated areas; or irritants, such as fumes, odors, dusts, gases, and chemicals. She could not have tolerated workplace hazards, such as moving mechanical parts, and high, exposed places. She had the mental capacity to tolerate occasional changes in the work setting.

(Tr. 15-16).

In reaching this RFC determination, the ALJ detailed Bowman's treatment history at length, noting the numerous instances in which clinical records reflected relatively benign or unremarkable findings. (Tr. 16-18). The ALJ also evaluated the medical opinion of Dr. Ramage, the sole medical source who described Bowman as being totally disabled, examining this opinion in light of this clinical record. On this score, the ALJ first turned to Dr. Ramage's physical assessment of the plaintiff. The

12

ALJ gave Dr. Ramage's medical opinion concerning Bowman's physical limitations

"little weight," observing that:

> [T]he record includes an August 2017 statement from Ann Ramage,
> MD, the claimant's primary care provider. Dr. Ramage stated that the
> claimant's symptoms constantly interfere with her attention and
> concentration; she must lie down or recline in excess o[f] normal breaks
> during an eight-hour workday; and can walk one block. Dr. Ramage
> noted the claimant can sit one hour total and stand/walk no hours in an
> eight-hour workday; needs 16 unscheduled half-hour breaks in an
> eight-hour workday, can occasionally lift and carry less than ten
> pounds, and can handle, finger, and reach ten percent of the time
> (B28F/3). Dr. Ramage indicated the claimant will be absent more than
> four times a month (B28F/4). In August 2016, Dr. Ramage reported the
> claimant "did have FCE and determined she could drive short
> distances" (B10F/15). These opinions are unsupported by the
> longitudinal treatment notes, which generally show the claimant in no
> acute distress with normal gait, normal station, normal range of motion,
> full strength, normal pedal pulses, normal sensation, lungs clear to
> auscultation and percussion, normal respiration rate, equal and non-
> labored breath sounds, no focal deficit, and no edema (B4F; B7F; B8F;
> B9F; B10F; B17F; B18F; B23F; B26F; B30F, B32F; B34F; B38F;
> B39F; B40F; B44F). These opinions are also unsupported because they
> are a checklist and conclusory statement with minimal explanation.
> Additionally, these opinions are inconsistent with the claimant's
> activities of daily living, which shows she can perform most personal
> care activities, drive short distances, and shop for necessities (B8E).
> Further, the record does not document problems with use of the left
> upper extremity, the limitation to sitting one hour in an eight-hour
> workday, and the claimant utilizes very conservative treatment for her
> carpal tunnel syndrome.

(Tr. 18-19).

Likewise the ALJ afforded little weight to Dr. Ramage's mental

capacity assessment, stating that:

> This opinion is unsupported by the progress notes through the date last insured, which mostly show the claimant was fully oriented and cooperative with appropriate mood, appropriate affect, normal languages, appropriate behavior, appropriate dress, organized and coherent thought process, normal speech, intact immediate memory, intact recent memory, intact remote memory, intact concentration, normal sleep, normal appetite, normal attention, normal energy, good insight, and good judgment (B7F; B10F; B17F; B20F; B23F; B26F; B30F; B32F; B33F; B34F; B39F; B40F; B44F; B45F; B47F). This opinion is also unsupported because it is a checklist with minimal explanation. Further, this opinion is inconsistent with the claimant's activities of daily living, which shows she can drive and manage finances (B8E). Additionally, this opinion is inconsistent with the claimant's lack of inpatient mental health treatment or referral to crisis intervention through the date last insured. Further, I note Dr. Ramage is not a mental health specialist. Accordingly, I give this opinion little weight.

(Tr. 19-20).

Instead, the ALJ gave greater weight to the opinions of the state agency expert who determined that Bowman had a greater capacity to meet the emotional demands of the workplace. (Tr. 19)  Having reached these conclusions regarding the medical clinical and opinion evidence, the ALJ found that, although Bowman was unable to return to her past relevant work, she could perform jobs that existed in significant numbers in the national economy. (Tr. 20-22). Accordingly, the ALJ determined that Bowman had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Tr. 22).

14

This appeal followed. (Doc. 1). On appeal, Bowman advances a single, narrowly focused claim, asserting that the ALJ's determination that she retained the residual functional capacity to perform light work was the product of legal error because the ALJ failed to properly evaluate the opinions of Bowman's treating physician, Dr. Ann Ramage. This appeal is fully briefed by the parties and is, therefore, ripe for resolution. As discussed in greater detail below, having considered the arguments of counsel, carefully reviewed the record, and remaining mindful of the deferential standard of review which applies here, we conclude that the ALJ's decision and evaluation of Dr. Ramage's medical opinion is supported by substantial evidence, and thus we will affirm the decision of the Commissioner denying this claim.

## III.   <u>Discussion</u>

### A.    <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not

substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d

607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir.

2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather

our task is to simply determine whether substantial evidence supported the ALJ's

findings. However, we must also ascertain whether the ALJ's decision meets the

burden of articulation demanded by the courts to enable informed judicial review.

Simply put, "this Court requires the ALJ to set forth the reasons for his decision."

<u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the

Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "<u>Burnett</u> does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple

work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under

Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns, 312 F.3d 113; see also Rathbun, 2018 WL 1514383, at *6; Metzger, 2017 WL 1483328, at *5.

24

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.     Standard of Review: Analysis of Medical Opinion Evidence.

The Commissioner's regulations which were in effect at the time of these administrative proceedings also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's]

physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to afford competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally were entitled to more weight. See 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where

applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

In conducting this analysis the ALJ also must consider, and may follow, the opinions of non-treating sources like state agency experts or outside consultants. At the initial level of administrative review, state agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. At the ALJ and Appeals Council levels of the administrative review process, however, findings by non-examining state agency medical and psychological consultants should be evaluated as medical opinion evidence. 20 C.F.R. § 404.1527(e) (effective Aug. 24, 2012, through Mar. 26, 2017). As such, ALJs must consider these opinions as expert opinion evidence by non-examining physicians and must address these opinions in their decisions. SSR 96-5p, 1996 WL 374183 at *6. Opinions by state agency consultants can be given weight "only

insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from non-examining state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3. See Mack v. Berryhill, No. 3:16-CV-02260, 2018 WL 1123705, at *6 (M.D. Pa. Mar. 1, 2018).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ— not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, when evaluating a treating source opinion, an ALJ may not unilaterally reject that opinion, and substitute the judge's own lay judgment for that medical opinion. However, the ALJ may discount such an opinion when it conflicts with other objective tests or examination results. Johnson, 529 F.3d at 202–03. Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

Finally, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

### D.   **The Decision of the ALJ Will Be Affirmed.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the ALJ's evaluation of the medical opinions proffered by Dr. Ramage.

In reaching this conclusion we note that it is axiomatic that:

The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review

30

records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear
... that the opinion of a treating physician does not bind the ALJ on the
issue of functional capacity," Brown v. Astrue, 649 F.3d 193, 197 n.
2 (3d Cir.2011). State agent opinions merit significant consideration
as well. See SSR 96–6p ("Because State agency medical and
psychological consultants ... are experts in the Social Security
disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f)
require [ALJs] ... to consider their findings of fact about the nature and
severity of an individual's impairment(s)....").

Chandler, 667 F.3d at 361.

Thus, while a treating source's opinion is entitled to careful consideration by
the ALJ, that opinion does not control the disability determination. Further, it is well
settled that: "'[t]here is no legal requirement that a physician have made the
particular findings that an ALJ adopts in the course of determining an RFC."
Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006).

Here, the ALJ's evaluation of Dr. Ramage's opinions and the ALJ's RFC
determination met all of the requirements prescribed by law and were supported by
substantial evidence; that is, "'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Biestek, 139 S. Ct. at 1154.  At the
outset, the ALJ's decision to give little weight to Dr. Ramage's opinions drew
support from substantial evidence. On this score, for the most part, Dr. Ramage's
extreme medical opinions concerning Bowman's limitations were expressed in a
singularly unpersuasive manner through a check box form. Thus, Dr. Ramage's

opinions on these issues of pivotal importance ran afoul of the well settled rule that: "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." <u>Passaretti v. Berryhill</u>, No. 4:17-CV-1674, 2018 WL 3361058, at *8 (M.D. Pa. July 10, 2018) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotations omitted)). <u>See</u> <u>Herzog v. Saul</u>, No. 1:20-CV-1081, 2021 WL 2222723, at *9 (M.D. Pa. June 2, 2021).

Moreover, to the extent that Dr. Ramage expressed views in a more fulsome manner, the doctor's narrative description of the degree of Bowman's impairments was so extreme that it lacked credibility. For example, Dr. Ramage reported that during an eight-hour work day, Bowman would be required to take sixteen unscheduled half hour breaks. (Tr. 1452). Thus, Dr. Ramage's report suggested that Bowman's entire work day would consist of a nothing more than a series of lengthy unscheduled breaks.

Furthermore, the weaknesses in these medical opinions became even more apparent when the medical opinions were juxtaposed against Dr. Ramage's treatment notes. Those treatment notes described a far more routine course of care, punctuated by repeated unremarkable and normal medical examinations and test results. In particular, it is difficult to reconcile the very extreme limitations recited by Dr. Ramage in her August 15, 2017 medical opinion assessments with the

doctor's own treatment notes of that same date, in which Bowman generally denied severe physical or emotional problems. (Tr. 1644). Given that an ALJ may discount a treating source opinion when it conflicts with other objective tests or examination results, Johnson, 529 F.3d at 202–03, or when there are material discrepancies between the treating source's medical opinion and the doctor's actual treatment notes, Torres, 139 F. App'x at 415, these findings, which are supported by the evidentiary record, fully justified the ALJ's decision to afford little weight to Dr. Ramage's opinion.

Having discounted this treating source opinion the ALJ, however, "did not merely rubber stamp" the other medical opinions in reaching this decision. Chandler, 667 F.3d at 361. Instead, the ALJ individually and critically assessed each of those remaining medical opinions. The ALJ then fashioned a limited light work RFC for Bowman, but nonetheless found that she could perform this limited range of work. We are mindful that our "'review of the ALJ's assessment of the [claimant]'s RFC is deferential,' and the 'RFC assessment will not be set aside if it is supported by substantial evidence.'" Stancavage v. Saul, 469 F. Supp. 3d 311, 339 (M.D. Pa. 2020). In the instant case, we find that the ALJ's assessment of the evidence complied with the dictates of the law and was supported by substantial evidence, a term of art which means less than a preponderance of the evidence but more than a

mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565.

This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the plaintiff's argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV. <u>Conclusion</u>

For the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: August 19, 2022